UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VINCENT THOMPSON,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. 17-305-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Vincent Thompson appeals the ALJ's decision finding him not disabled. He contends the ALJ erred in (1) failing to find headaches are a severe impairment; (2) rejecting four doctors' opinions about his mental limitations, and two doctors' opinions about his physical limitations; and (3) failing to develop the record. Dkt. 15. The Court agrees the ALJ harmfully erred and accordingly **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## DISCUSSION

**A.    Head Aches and Step Two Findings**

At step two the ALJ found Mr. Thompson has several physical and mental conditions but made no mention of headaches at the step or at any subsequent step. Mr. Thompson argues the ALJ erred in failing to find his severe and chronic headaches are a severe impairment and

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 1

harmfully erred in failing to consider the impact of the headaches on his ability to perform gainful work. Dkt. 15 at 15-16. The Commissioner argues the ALJ did not err because there are "no anatomical or physiological abnormalities shown by medically acceptable clinical and laboratory techniques" that prove he has headaches. Dkt. 16 at 2. However, the ALJ did not find Mr. Thompson's headaches are not medically determinable. In fact, the ALJ did not mention headaches at all. The Commissioner's argument is consequently an improper post-hoc rationalization the Court cannot rely on to affirm the ALJ. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). The Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225 (9th Cir. 1995).

The Commissioner's argument also assumes there are tests or procedures that could have been utilized to substantiate an abnormality causing Mr. Thompson's headaches. But no such test exists. *See e.g. Spiteri v. Colvin*, No. 16-1937, 2016 WL 7425924 at *11 (N.D. Cal. Dec. 23, 2016) (There is no test for migraine headaches."); *Hansen v. Colvin*, 15-190, 2016 WL 4582041 at * 4 (D. Idaho Sept. 1, 2016) (ALJ's step two ruling required proof of "'objective' evidence for her migraines when no such evidence would have been attainable."); *McPherson v. Colvin,* No. 15-5363, 2015 WL 6692243, at * 5 (W.D. Wash. Nov. 2, 2015) ("there is no objective clinical test which can corroborate" existence of migraine headaches.).

The record shows the ALJ failed to discuss or address Mr. Thompson's headaches. This failure is not harmless. This isn't a case in which there is no evidence Mr. Thompson suffers from chronic headaches. On the contrary, as the parties' note, Mr. Thompson's medical providers repeatedly state one of his "chronic problems" is chronic post-trauma headache," and

repeatedly noted the problem in Mr. Thompson's medical records. Dkt. 15 at 15; Dkt. 16 at 2. Furthermore the record shows the headaches have more than a minimal impact on Mr. Thompson. He testified his headaches affected his ability to work, Tr. 46, 155, and treating doctor Raji Venkateswaran, M.D. wrote Mr. Thompson "reports ha in forehead, worse with light, and reading. Has x 2 years + not eval well at HMC, diff to do tasks, Has occur 3-4 times." Tr. 490.

In sum, the ALJ harmfully erred in failing to address the impact of headaches on Mr. Thompson's ability to perform work. There is ample medical evidence that Mr. Thompson suffers from headaches and that it has some impact on his ability to perform to perform gainful work. In order to properly determine Mr. Thompson's RFC, the ALJ was required to consider all of the relevant medical opinions as well as the combined effects of all of plaintiff's impairments, even those not found to be severe. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a), *see also Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir.2003) (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe" when assessing the RFC) (quoting SSR 96-8p) (internal quotations omitted). This did not occur because the ALJ completely disregarded headaches; the case accordingly must therefore be remanded for further proceedings.

**B.      The ALJ's Evaluation of Medical Evidence Regarding Mental Health**

Mr. Thompson argues the ALJ misevaluated the opinions of Dr. Carmela Washington Harvey, Robert Parker, Ph.D., George Ankuta, Ph.D., David Widlan, Ph.D., Raji Venateswaran, M.D., Dkt. 15 at 3-10. Because the ALJ failed to address, in any fashion, the impact of Mr. Thompson's chronic headaches on his ability to work, the ALJ's assessment of the medical evidence regarding Mr. Thompson's mental functioning can no longer be deemed supported by

substantial evidence and must be revisited. What is obviously missing from the ALJ's assessment of Mr. Thompson's RFC, and which must be developed further, is the effect his chronic headaches have, singly or in combination, with his other mental impairments and limitations. Although the case must be remanded for reassessment of the medical opinions above, the ALJ's treatment of the opinions of Drs. Harvey, Parker and Widlan merit additional discussion.

### 1. *Drs. Harvey, Parker, Venkateswaran*

The ALJ did not mention Drs. Harvey, Parker or Venkateswaran. The Commissioner argues the ALJ did not have to consider these doctors' opinions because they were given before December 2013 and are thus irrelevant. Dkt. 16 at 3-4. Of course this is but an impermissible post-hoc justification because the ALJ did not address Drs. Harvey or Parker at all.

The Court also rejects the notion the opinions are irrelevant because they predate the "period under the ALJ's consideration." *Id.* Mr. Thompson applied for Supplemental Security Income (SSI) in December 2013, alleging disability beginning April 2003. Tr. 12. Under 20 C.F.R. §§ 416.330(a); 416.355, the earliest month an SSI applicant is eligible to receive benefits is the month following the month the SSI application is filed. But while the regulations set the earliest date an applicant can receive benefits, they "say nothing about when a claimant's disability actually begins." *Owen v. Colvin*, No.15-5933-KLS, 2016 WL 6080910 at *3 (W.Wash. Oct. 18, 2016). Here Mr. Thompson claimed he became disabled in 2003. Dr. Harvey rendered her opinion in April 2010, Tr. 292. Dr. Parker rendered his opinion in March 2011 and 2012. Tr. 313-26. Dr. Venkateswaran rendered his opinion in March 2010. The opinions are relevant evidence about Mr. Thompson's functional limitations because the ALJ made no findings that he improved between the time the opinions were given, and the time he became

eligible to receive benefits. In other words, Mr. Thompson could have become disabled in 2010 and because his condition did not improve, continued to be disabled at the time he applied for SSI benefits.

The Court also rejects the Commissioner's argument that *Vasquez ex rel. S.R.A. v. Astrue*, No EDCV0800449AJW, 2009 WL 1444728, at * 1. n. 1 (C.D. Cal. May 19, 2009), authorizes the ALJ to completely ignore without comment the opinions or to find them irrelevant. Dkt. 16 at 3, n. 2. The case is not binding precedent and conflates "disability onset" with the earliest date an SSI claimant can be paid. Virtually all disability claims substantially rely on evidence predating the date the disability application is filed. This is because a claimant needs evidence of disability to apply for benefits, and that evidence necessarily involves records, statements, and opinions that predate the application. The ALJ must assess what weight evidence of record is given and may discount it in the appropriate case. For instance, the ALJ may reject medical opinions due to improvements to the claimant's physical or mental condition between the time the opinion was rendered and the relevant time at issue. But the mere fact a claimant became disabled before he or she is eligible to begin receiving SSI benefits does not render evidence from the onset of disability irrelevant. For example, a claimant permanently loses all ability to see, and the only medical evidence of this loss are records from the claimant's hospitalization in 2010. The claimant applies for SSI in 2013. The Commissioner would have the Court find no error where the ALJ ignores or omits the 2010 medical evidence, and instead concludes that based upon a lack of evidence from the "relevant" period in an SSI case, the claimant retains the RFC to perform a job in the national economy.

This extreme example simply illustrates the difference between relevant evidence of disability and the earliest date an SSI claimant is entitled to begin receiving payment. Here, two

doctors opined Mr. Thompson has significant mental limitations that would affect his ability to work. Dr. Venkateswaran also indicated Mr. Thompson had difficulty doing tasks due to headaches. Without comment, the ALJ completely ignored these opinions rather than fulfilling the ALJ's duty to weigh and assess all relevant evidence of record. The ALJ accordingly harmfully erred.

### *2.    Dr. Widlan*

The ALJ rejected Dr. Widlan's opinions on the grounds they were rendered "in the context of a Washington Department of Health Services assistance exam, which relies upon a different set of standards and circumstances than the analysis in Social Security Disability appeal." Tr. 21. The ALJ committed legal error because "the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Additionally the ALJ's claim the doctor used different standards is unsupported. The ALJ did not explain how or why the doctor's opinions rely on standards so different that they are useless or irrelevant for purposes of a disability determination. Moreover, most doctors, especially treating doctors, do not create medical records based specifically on the "standards and circumstances" used in "the analysis in Social Security Disability appeal." The ALJ's rationale would thus preclude reliance on virtually all treating source records and opinions.

The ALJ also rejected Dr. Widlan's opinions because it was a one-time evaluation. Tr. 21. This is a legally erroneous reason. Examining doctors generally provide opinions based upon a single examination. The ALJ's rationale would render all examining opinions superfluous, and is contrary to the requirement that the ALJ consider all relevant evidence, including medical opinions of examining doctors. *See* 20 C.F.R. § 416.945(a) (ALJ must assess medical reports in

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 6

determining a claimant's capacity to work). In short, the ALJ failed to provide valid reasons to reject Dr. Widlan's opinions and must reassess his opinions on remand.

**C.     The ALJ's Evaluation of Medical Evidence Regarding Fracture Finger**

Mr. Thompson argues the ALJ failed to account for limitations found by Michael Blatner, M.D., regarding Mr. Thompson's fractured left index finger. The ALJ recognized status post fracture as a severe impairment but found the fracture was "well-healed," and that Mr. Thompson's testimony about limitations caused by the fracture are not credible. Tr. 20. The Commissioner argues the ALJ committed no error because there is no "conflict between Dr. Blatner's assessment and the ALJ's decision." Dkt. 16 at 6. The record shows otherwise. While the fracture healed well, Dr. Blatner found Mr. Thompson suffered "significant stiffness" and reduced range of motion, subsequent to the surgery. Tr. 500. These findings were not based upon Mr. Thompson's self-reports. Rather Dr. Blatner described the "flexed position" of the fractured finger; calculated limitations to range of motion; and noted that x-ray examination reveals an "irregularity along the metacarpal surface." *Id.* The doctor noted Mr. Thompson's problems might be addressed if the "scar tissue in question" could be released through additional surgery, noting it would not be a simple procedure. In short, the ALJ misevaluated limitations found by Dr. Blatner. The doctor opined Mr. Thompson had stiffness and range of motion problems. These opinions were based upon objective medical evidence, not on Mr. Thompson's self-reports as the ALJ found. The ALJ should have accounted for these limitations in determining whether Mr. Thompson could perform all levels of medium work and had "unlimited . . . fine and gross and fingering," but did not. Tr. 17. The ALJ accordingly harmfully erred.

//

//

## D. Development of the Record

The ALJ rendered a disability determination based upon an incomplete record. The record contains only two of a three page 2011 psychiatric evaluation performed at neighborcare health. Tr. 307-08. The Commissioner argues the missing evidence is irrelevant because it does not relate to the relevant period. Dkt. 16 at 6. The ALJ did not mention the evaluation and the Court rejects the argument as an impermissible post hoc justification. Further, as discussed above, this evidence is relevant, and cannot be ignored without comment. This is especially so because the last line of page 2 of the evaluation states: "42-year-old man with significant depression and symptoms of posttaumatic stress disorder. **Most worrisome is his** . . ." (emphasis added). This language indicates Mr. Thompson could have a significant limitation which the ALJ did not account for in determining his RFC.

The Commissioner also argues the incomplete record is Mr. Thompson's fault. However, "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 930 (9th Cir. 2014) (citation omitted). This includes the duty to fully and fairly develop the record. *Thompson v. Schweiker*, 665 F.2d 936, 941 (9th Cir. 1982). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here the ALJ erred as a matter of law in rendering a decision based upon an incomplete record. The error was not harmless given the language in the last sentence of page two. On remand, the ALJ must complete the record and consider the full evaluation.

## CONCLUSION

For the reasons above, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the case for further administrative proceedings under sentence four of 42 U.S.C. §

405(g). On remand, the ALJ shall consider the impact of headaches on Mr. Thompson's ability to perform work; assess the opinions of Drs. Harvey, Parker, Venkateswaran; reassess the opinions of Drs. Ankuta, Widlan; complete the record by obtaining and reviewing the complete 2011 neighborcare health psychiatric evaluation; develop the record as needed; and as appropriate redetermine Mr. Thompson's RFC ,and proceed to steps four and five.

DATED this 28th day of September, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge